UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **DAYNA RICE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**CENTRAL MORTGAGE FUNDING, LLC,** a Michigan company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Dayna Rice ("Plaintiff Rice" or "Rice") brings this Class Action Complaint and Demand for Jury Trial against Defendant Central Mortgage Funding, LLC, ("Defendant" or "Central Mortgage Funding") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Rice, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.     Plaintiff Rice is a resident of Sylvania, Georgia.

2.     Defendant Central Mortgage Funding is a company registered in Michigan, with its headquarters located in Southfield, Michigan. Defendant Central Mortgage Funding conducts business throughout this District and throughout the US, including Georgia.

## JURISDICTION AND VENUE

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction and venue is proper since Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5.     As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.     According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in July 2023 alone, at a rate of 144.8 million per day. www.robocallindex.com (last visited August 6, 2023).

10.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

12.   "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.   Defendant Central Mortgage Funding provides mortgage-related services including loan refinancing for consumers.[3]

14.   Defendant Central Mortgage Funding places telemarketing cold calls to consumers without consent, including to those consumers who have recently had their credit checked by a different company.

15.   Defendant Central Mortgage Funding lists cold calling as a job responsibility, according to job postings for a Mortgage Loan Officer Assistant:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://centralmortgagefunding.com/

**Mortgage Loan Officer Assistant**

Central Mortgage Funding - Southfield, MI

From $18 an hour

**Apply Now**

---

Job Description: Loan Officer Assistant

Responsibilities:
- A Loan Officer Assistant (Telemarketer) plays a vital role in the administrative upkeep of a loan office. As such, the duties of a Loan Officer Assistant in the **cover the entire loan origination process, including managing paperwork and interacting with everyone involved to keep the process moving efficiently**.
- Make several cold calls a day with the goal to transfer them to LO's
- Interview applicants to gather financial information and assess their eligibility
- Guide borrowers through the loan application process and ensure all required documents are submitted accurately and in a timely manner
- Obtain and maintain knowledge of current lending regulations and industry trends
- Build and maintain relationships with clients, real estate agents, and other referral sources to generate new business opportunities [4]

16.     Unfortunately, some of the calls from Central Mortgage Funding are being placed to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

17.     To make matters worse, Central Mortgage Funding lacks a sufficient opt-out system to ensure that a consumer who notifies Central Mortgage Funding to stop calling them will be removed from their calling list, again, as per Plaintiff's experience.

---

[4] https://www.indeed.com/cmp/Central-Mortgage-Funding/jobs?jk=99b7d705b2ae7326&start=0

18.     In fact, a former Central Mortgage Funding employee posted a

complaint online about calls that he had to place, including calls to consumers who

had already been called multiple times by the Defendant:

**John Korkes**
1 review

⭐☆☆☆☆  3 months ago

In my opinion, Central Mortgage Funding is the worst and sketchiest company I have ever worked for.
During my time there, I found it extremely unprofessional that the owner of the company (Andy) never
checked on his employees to see how they were doing. As a telemarketer, I was given a call list that
consisted of people who had been called multiple times by Central Mortgage Funding, which I found to
be ridiculous. To make matters worse, the company decided to terminate my employment via text
message instead of speaking to me in person, despite the fact that they knew I was present in the office.
This is just bad business practice and highlights the lack of respect and professionalism at Central
Mortgage Funding. Terrible business                                                                    5

19.     Consumers have posted complaints online alleging that their

information was acquired by Central Mortgage Funding through a credit bureau,

causing them to receive unsolicited calls, including:

- "I'm in the process of buying a home through my lender. ***The day
  after mine and my husband's credit got pulled*** starting at 8am on the
  dot, my phone wouldn't stop ringing from random mortgage
  companies every two to three minutes for two days! It has been a
  week and after repeitivly telling companies to take us off their list
  and stop the harassment. Central Mortgage continues with the
  harrassment calls three times a day sometimes within ten minutes of
  each other!!! I have spoken to two 'Managers' now requesting them to
  stop having their reps call us and Chris a floor manager didn't seem to
  care about me stating it was harrassing and I wanted the calls to
  stop…"[6] (emphasis added)

- "We received over 70 calls in one day from these people. Rude
  abusive behavior from their telemarketers. Several hundred harassing

---

[5] https://www.google.com/search?q=central+mortgage+funding+llc
[6] https://www.yelp.com/biz/central-mortgage-funding-southfield

calls continued for over a week. ***They buy the inquiries lists from Credit bureau***."[7] (emphasis added)

- "Worst mortgage company. ***Called me over 20 times in 3 hours after my credit was pulled by equifax.*** They refused to take me off their call list and would not let me talk to a manger. ***Chloe told me it was my fault they were calling because I had my credit checked***. After reviewing your many complaints, please don't just 'apologize this happened to me'. You are clearly not sorry. Stop your practice of harassing people."[8] (emphasis added)

- "I understand sales and marketing but this company is almost harassing*. **They purchased my information from the credit bureau's*** and literally call me 5 times a day trying to 'save' me money by 'stealing' me away from the lender I am working with. Not the way I do business. I have asked about 45 times to take me off of their call list and guess what. Still get 5 calls a day. Pretty ruthless business you guys have going."[9] (emphasis added)

- "This company calls me 30+ times a day. ***Like others have posted it was due to a credit inquiry that had nothing to do with them***. I was nice the first 20+ calls and asked them to remove me from their list. They have NOT. The person I spoke to not even 10 minutes ago says they have left me on because I was rude. I can only handle being harassed for so long. Will not recommend this company to anyone. Wish I could give negative stars."[10] (emphasis added)

20.     Many consumers have posted complaints online directly to Central Mortgage Funding about unsolicited call that they received, including many complaints from consumers that were unable to get the Defendant to stop calling after asking for the calls to stop, including:

---

[7] Id.

[8] https://www.google.com/search?q=central+mortgage+funding+llc

[9] Id.

[10] Id.

- "30+ calls in a morning from spoof numbers, ***asked repeatedly that I don't want to do business with them***.   Got cursed at by Justin.  Don't do business with these people."[11] (emphasis added)

- "They called me no less than 35 times in one morning. ***I asked them to stop calling and they would not. I am on the national do not call list and they do not care.*** I asked "Mike" his last name and he swore at me and then hung up. After that the calls increased. Would never do business with someone who treats potential customers like this."[12] (emphasis added)

- "This company keeps calling the phone of my 11 year old child! ***We have told them repeatedly they have the wrong number. They continue to call***, laugh at us, curse us, and ***when we say 'do not call this number again,' they respond by saying they will call again***. They have been calling since 8:00 this morning. It is now 2:15pm. We have received over a DOZEN CALLS telling them not to call again and they still call! STOP CALLING MY CHILD'S PHONE!!!!"[13]

- "Terrible company with poor ethics. They have been cold calling me for two weeks, 30 to 40 times per day. ***Will not remove me from the call list.*** I have blocked every number they called from and still get calls spoofed from a new number.
  Edit: When a bad google review is the only way to force you to act properly it says alot about the values of your company. I have already filed a complaint with the FTC and encourage others to do the same. Edit2: The calls are already starting again today. You should be ashamed of yourself."[14]

- "This company abuses the privilege they are given with the ability to cold call clients. They will call you about 40 different times with different Representatives every time and ***will never respect your wish to be taken off of their call list. They will even argue with you*** excessively even though you've asked them to end the conversation. They are aggressive and do not deserve the business that they are

---

[11] https://www.yelp.com/biz/central-mortgage-funding-southfield
[12] Id.
[13] https://www.google.com/search?q=central+mortgage+funding+llc
[14] Id.

8

getting. I rarely ever do Google reviews but this is out of control. It won't let me select zero stars for the rating"[15]

- "Company bought my information and continues to harrass me. I write down every call and each representative says they are with Central Mortgage Funding. *Ask each time to be put on their DNC (DO NOT CALL LIST) I did not opt into phone calls and they continue to call.* I asked one representative for his NMLS license number and he said he didn't have one. When I asked to speak with his supervisor he laughed and ignored my request. He went on to discuss FHA mortgage programs in detail, in an attempt to persuade me into that program..."[16] (emphasis added)

- "They have called 30 times today, starting at 8:05 am. *I keep telling them to take me off the list but they say they cannot.* The last person, hung up on me and said 'I need to learn how to talk to people' after I told them they have called 5 times within 6 hours. They call from area local numbers and area codes from around my state. I'm too busy for this. I'm filing a harassment complaint."[17] (emphasis added)

- "They will not stop calling me after getting a trigger lead on a credit check done for a home equity loan. *Will not stop after repeatedly asking them to.* Will be filing a report for harassment."[18] (emphasis added)

- "I agree with the previous review! These people are way too pushy. *The person I spoke with wouldn't take no for an answer and after telling him no, \*\*\*\*\* kept calling me back-to-back to the point I had to get ugly and say, 'stop calling or ill press charges for harassment!'* The guy literally wanted to go around and around on the phone, TERRIBLE!!!! I personally DO NOT recommend this company. These reviews should be a learning \*\*\*\*\*\* for this company, that people do leave reviews and a lot of people choose companies based on their reviews..."[19] (emphasis added)

- "I have received a call from several employees! Over 10 in the last 2 days. *I have asked over and over to place a cease and desist on my*

---

[15] Id.
[16] Id.
[17] https://www.bbb.org/us/mi/southfield/profile/mortgage-broker/central-mortgage-funding-0332-90039014/customer-reviews
[18] Id.
[19] Id.

***phone number and still I keep receiving calls.*** This company has no
regard for other people and clearly violate the law by continuing to
call even after a request for a cease and desist has been provided!!!All
they do is change their number and keep calling. I also will be filing a
complaint with the FCC.And they clearly dont care as you can see
from the many complaints on this page with a copy and paste response
from their company."[20] (emphasis added)

21.     In response to these calls, Plaintiff Rice brings forward this case
seeking injunctive relief requiring the Defendant to cease from violating the TCPA,
as well as an award of statutory damages to the members of the Classes and costs.

### PLAINTIFF RICE'S ALLEGATIONS

22.     Plaintiff Rice registered her cell phone number on the DNC on June 20,
2023.

23.     Plaintiff Rice uses her cell phone number for personal use only as one
would use a landline telephone number in a home.

24.     In the middle of June 2023, Plaintiff Rice had her credit pulled by her
bank.

25.     Plaintiff Rice did not fill out any documentation online. She was not
looking to get a loan from any company other than her bank.

---

[20] Id.

26.     As soon as her credit was pulled, Plaintiff Rice began receiving unsolicited telemarketing calls to her cell phone regarding loans and refinancing. The majority of the callers did not disclose a company name.

27.     On June 19, 2023 alone, Plaintiff received the following unsolicited calls from Defendant Central Mortgage Funding to her cell phone number:

- 912-900-8287 at 10:34 AM;
- 912-292-4082 at 11:52 AM;
- 912-642-9593 at 12:16 PM;
- 912-900-8287 at 12:23 PM;
- 912-642-9593 at 2:13 PM;
- 912-642-9593 at 2:24 PM;
- 912-292-4082 at 2:56 PM; and
- 912-900-8287 at 4:01 PM.

28.     None of the aforementioned calls were answered and no voicemails were left.

29.     Plaintiff Rice received additional unsolicited calls from Defendant Central Mortgage Funding, including:

- June 21, 2023 from 912-900-8287 at 4:07 PM;
- June 22, 2023 from 912-642-9593 at 9:13 AM;
- June 22, 2023 from 912-292-4082 at 10:30 AM; and
- June 22, 2023 from 912-900-8287 at 12:28 PM.

30.     On June 22, 2023 at 2:19 PM, Plaintiff Rice received an unsolicited call from Central Mortgage Funding to her cell phone, from 912-642-9593.

31.     When Plaintiff Rice answered this call, an employee identified the company name Central Mortgage Funding and began a sales pitch offering refinancing. Plaintiff told the employee to stop calling her cell phone number and hung up the phone.

32.     Despite her stop request, Plaintiff Rice received another unsolicited call from Central Mortgage Funding to her cell phone on June 22, 2023 at 3:32 PM from 912-292-4082. This call was not answered.

33.     Plaintiff Rice then received another unsolicited call to her cell phone from Defendant Central Mortgage Funding on June 22, 2023 at 5:26 PM from 912-900-8287.

34.     When Plaintiff Rice answered this call, an employee identified the company name Central Mortgage Funding and began a sales pitch offering refinancing. Plaintiff told the employee to stop calling her cell phone number and hung up the phone.

35.     On June 22, 2023 at 5:33 PM, Plaintiff received yet another unsolicited call from Central Mortgage Funding to her cell phone from 912-900-8287.

36.     Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned.

37.     On June 23, 2023 at 10:31 AM, Plaintiff received an unsolicited call from Central Mortgage Funding to her cell phone, from 912-292-4082.

38.     Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned.

39.     On June 23, 2023 at 10:43 AM, Plaintiff received an unsolicited call from Central Mortgage Funding to her cell phone, again from 912-292-4082.

40.     Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned.

41.     On June 23, 2023 at 12:18 PM, Plaintiff received an unsolicited call from Central Mortgage Funding to her cell phone, again from 912-292-4082.

42.     Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned.

43.     On June 23, 2023 at 2:55 PM, Plaintiff received an unsolicited call from Central Mortgage Funding to her cell phone, again from 912-900-8287.

44.     Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned.

45.     Plaintiff then received 2 back-to-back calls from Central Mortgage Funding to her cell phone on June 23, 2023 at 3:49 PM from 912-642-9593. These calls were not answered.

46.     On August 3, 2023 at 8:05 AM, Plaintiff Rice received an unsolicited call from Central Mortgage Funding to her cell phone, from 912-900-7854.

47.     Plaintiff Rice answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned.

48.     On August 8, 2023 at 8:24 AM, Plaintiff Rice received an unsolicited call from Central Mortgage Funding to her cell phone, from 770-824-3943.

49.     Plaintiff Rice answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned.

50.     The calls that Plaintiff Rice received from Defendant Central Mortgage Funding in August 2023 were received more than 31 days after Plaintiff registered her cell phone number on the DNC.

51.     Plaintiff Rice has never done business with Central Mortgage Funding and has never given them consent to call her phone number.

52.     The unauthorized solicitation telephone calls that Plaintiff Rice received from or on behalf of Defendant Central Mortgage Funding have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

53.     Seeking redress for these injuries, Plaintiff Rice, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

54.     Plaintiff Rice brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Central Mortgage Funding called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Central Mortgage Funding called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

55.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Rice anticipates the need to amend the Class definition following appropriate discovery.

56.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

57.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c)     whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

58.     **Adequate Representation**: Plaintiff Rice will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Rice has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Rice and her counsel are committed to vigorously prosecuting this action on behalf of the

members of the Classes, and have the financial resources to do so. Neither Plaintiff Rice nor her counsel have any interest adverse to the Classes.

59.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Rice. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rice and the Do Not Registry Class)**

60.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

61.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

62.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

63.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Rice and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

64.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Rice and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200,

as described above.

65.     As a result of Defendant's conduct as alleged herein, Plaintiff Rice and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

66.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Rice and the Internal Do Not Call Class)

67.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

68.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

69.     Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

70.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

71.     Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Rice requests a jury trial.

Respectfully Submitted,

**DAYNA RICE**, individually and on behalf of all others similarly situated,

DATED this 21st day of August, 2023.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
Coleman PLLC

66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

George T. Blackmore*
CND Law Group PLLC
32900 Five Mile Road
Livonia, MI 48154
734-888-8399
Fax: 734-418-3686
Email: gblackmore@cnd-law.com

*Attorneys for Plaintiff and the putative
Classes*

*Local counsel*