UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **DAYNA RICE,** individually and on behalf of all others similarly situated, | No. 2:23-cv-12143-TGB-APP |
| *Plaintiff*, | |
| *v.* | Hon. Terrence G. Berg |
| **CENTRAL MORTGAGE FUNDING, LLC,** a Michigan company, | Mag. Judge Anthony P. Patti |
| *Defendant.* | |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS AND/OR
STRIKE THE AMENDED COMPLAINT AND BRIEF IN SUPPORT**

The Court should deny Defendant Central Mortgage Funding's motion to dismiss and strike in all respects.

*First*, Plaintiff Rice sufficiently alleges that Central Mortgage Funding is directly liable under the Telephone Consumer Protection Act for initiating the calls she received by alleging that between June 22 and August 8 she received 24 calls from 5 telephone numbers, and that during at least 9 of those calls (including at least 1 call from each of the 5 numbers) the caller stated they were calling from Central Mortgage Funding. First Amended Complaint, ECF No. 11, at ¶¶ 29-51. In addition, Plaintiff alleges that during at least 4 of these calls, the callers that identified as being from Central Mortgage Funding tried to sell Plaintiff on a mortgage refinancing, which is precisely the type of business Central Mortgage Funding is involved in.

*Second*, Plaintiff sufficiently alleges that her number is a residential number

i

by alleging that (1) she is the named subscriber of the number, (2) she is the sole user of the number, (3) she registered the number on the National Do Not Call Registry, (4) she uses the number for personal use as one would use a landline number in a home, including to communicate with family and friends, and (5) the number is not associated with a business or used for business-related purposes. First Amended Complaint at ¶¶ 22-25.

*Third*, Plaintiff sufficiently alleges that she received two or more telephone solicitations from Central Mortgage Funding by alleges that during at least 4 different calls Central Mortgage Funding employees tried to sell her a mortgage refinance, which is one of the products Central Mortgage Funding sells. First Amended Complaint at ¶¶ 13-14, 33, 36, 49-50. In fact, during at least 2 of these calls, the Central Mortgage Funding employees specifically told Plaintiff that she could save money by refinancing with Central Mortgage Funding. *Id.* at ¶¶ 36, 39.

*Fourth*, Plaintiff sufficiently alleges that Central Mortgage Funding failed to adequate implement the required policies and procedures for maintaining an internal do not call list and being entitled to engage in telemarketing by alleging that during 9 different calls, including multiple on June 22, she told Central Mortgage Funding to stop calling her, but that the calls continued for 7 more weeks, until August 8. First Amended Complaint at ¶¶ 32-51. In fact, Plaintiff received 11 more calls from Central Mortgage Funding after her first stop request, including 8 more during which she expressly asked for the calls to stop. *Id*.

*Fifth*, there is no basis for striking any of Plaintiff's allegations regarding other consumer and employee complaints regarding Central Mortgage Funding's illegal

telemarketing conduct because they are relevant to her allegations (1) that Central Mortgage Funding makes telemarketing calls, including to numbers on the National Do Not Call Registry and to consumers who have specifically requested to not be called 's calls were telemarketing, (2) that Central Mortgage Funding's TCPA violations were willful, and (3) that the proposed classes satisfy the required elements for class certification, including typicality, commonality, and numerosity.

*Sixth*, there is also no basis for striking Plaintiff's proposed classes. Central Mortgage Funding's mere allusions to potential defenses and individualized issues are inconsistent with the inferences to be drawn from Plaintiff's allegations at this stage. Any determination that the classes are uncertifiable would therefore be premature prior to discovery.

Central Mortgage Funding's motion is therefore due to be denied in total.

Respectfully Submitted,

DATED this 5th day of January, 2024.

/s/ *Avi R. Kaufman*
Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

George T. Blackmore*

CND Law Group PLLC
32900 Five Mile Road
Livonia, MI 48154
734-888-8399
Fax: 734-418-3686
Email: gblackmore@cnd-law.com

*Attorneys for Plaintiff and the putative Classes*

*\*Local counsel*

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE**

## I.   ISSUES PRESENTED

1. Whether Plaintiff has adequately pleaded plausible claims for relief under Fed. R. Civ. P. 12(b)(6). Plaintiff answers: "Yes."

2. Whether Plaintiff's class and other allegations should be stricken under Fed. R. Civ. P. 12(f) and 23. Plaintiff answers: "No."

## II.   CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *Smith v. Am.-Amicable Life Ins. Co.*, No. 22-333, 2022 U.S. Dist. LEXIS 62115 (E.D. Pa. Apr. 4, 2022)

- *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916 (M.D. Fla. Sep. 23, 2021)

- *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS, 2022 U.S. Dist. LEXIS 87464 (E.D. Wis. May 16, 2022)

- *Escano v. Rci LLC*, No. 22-360 DHU/GJF, 2022 U.S. Dist. LEXIS 213384 (D.N.M. Nov. 28, 2022)

- *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 U.S. Dist. LEXIS 6018 (D. Ariz. Jan. 12, 2023)

- *Delgado v. Emortgage Funding, LLC*, No. 21-CV-11401, 2021 U.S. Dist. LEXIS 196785 (E.D. Mich. Oct. 13, 2021)

## SUMMARY OF ARGUMENT AND INTRODUCTION

The Court should deny Defendant Central Mortgage Funding's motion to dismiss and strike in all respects.

*First*, Plaintiff Rice sufficiently alleges that Central Mortgage Funding is directly liable under the Telephone Consumer Protection Act for initiating the calls she received by alleging that between June 22 and August 8 she received 24 calls from 5 telephone numbers, and that during at least 9 of those calls (including at least 1 call from each of the 5 numbers) the caller stated they were calling from Central Mortgage Funding. In addition, Plaintiff alleges that during at least 4 of these calls, the callers that identified as being from Central Mortgage Funding tried to sell Plaintiff on a mortgage refinancing, which is precisely the type of business Central Mortgage Funding is involved in.

*Second*, Plaintiff sufficiently alleges that her number is a residential number by alleging that (1) she is the named subscriber of the number, (2) she is the sole user of the number, (3) she registered the number on the National Do Not Call Registry, (4) she uses the number for personal use as one would use a landline number in a home, including to communicate with family and friends, and (5)  the number is not associated with a business or used for business-related purposes.

*Third*, Plaintiff sufficiently alleges that she received two or more telephone solicitations from Central Mortgage Funding by alleges that during at least 4 different calls Central Mortgage Funding employees tried to sell her a mortgage refinance, which is a product Central Mortgage Funding sells. In fact, during at least 2 of the calls, the Central Mortgage Funding employees specifically told Plaintiff

that she could save money by refinancing with Central Mortgage Funding.

*Fourth*, Plaintiff sufficiently alleges that Central Mortgage Funding failed to adequate implement the required policies and procedures for maintaining an internal do not call list and being entitled to engage in telemarketing by alleging that during 9 different calls, including multiple on June 22, she told Central Mortgage Funding to stop calling her, but that the calls continued for 7 more weeks, until August 8. First Amended Complaint, ECF No. 11, at ¶¶ 32-51. In fact, Plaintiff received 11 more calls from Central Mortgage Funding after her first stop request, including 8 more during which she expressly asked for the calls to stop. *Id.*

*Fifth*, there is no basis for striking any of Plaintiff's allegations regarding other consumer and employee complaints regarding Central Mortgage Funding's illegal telemarketing conduct because they are relevant to her allegations (1) that Central Mortgage Funding makes telemarketing calls, including to numbers on the National Do Not Call Registry and to consumers who have specifically requested to not be called 's calls were telemarketing, (2) that Central Mortgage Funding's TCPA violations were willful, and (3) that the proposed classes satisfy the required elements for class certification, including typicality, commonality, and numerosity.

*Sixth*, there is also no basis for striking Plaintiff's proposed classes. Central Mortgage Funding's mere allusions to potential defenses and individualized issues are inconsistent with the inferences to be drawn from Plaintiff's allegations at this stage. Any determination that the classes are uncertifiable would therefore be premature prior to discovery.

Central Mortgage Funding's motion is therefore due to be denied in total.

2

## PLAINTIFF'S ALLEGATIONS

Defendant Central Mortgage Funding provides mortgage-related services including loan refinancing for consumers. First Amended Complaint (ECF No. 11) at ¶ 13. To sell these service, Defendant Central Mortgage Funding places telemarketing cold calls to consumers without consent, including to those consumers who have recently had their credit checked by a different company. *Id*. at ¶ 14.

Some of the calls from Central Mortgage Funding are being placed to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience. *Id*. at ¶ 16. To make matters worse, Central Mortgage Funding lacks a sufficient opt-out system to ensure that a consumer who notifies Central Mortgage Funding to stop calling them will be removed from their calling list, again, as per Plaintiff's experience. *Id*. at ¶ 17.

Consistent with this, Defendant Central Mortgage Funding lists cold calling as a job responsibility, according to job postings for a Mortgage Loan Officer Assistant. *Id*. at ¶ 15. In fact, a former Central Mortgage Funding employee posted a complaint online about calls that he had to place, including calls to consumers who had already been called multiple times by the Defendant. *Id*. at ¶ 18.

And consumers have posted complaints online alleging that their information was acquired by Central Mortgage Funding through a credit bureau, causing them to receive unsolicited calls. *Id*. at ¶ 19. In fact, many consumers have posted complaints online directly to Central Mortgage Funding about unsolicited call that they received, including many complaints from consumers that were unable to get the Defendant to stop calling after asking for the calls to stop. *Id*. at ¶ 20.

This was precisely the Plaintiff's experience.

Plaintiff Rice is the subscriber and sole user of the cell phone number ending with 0001. *Id*. at ¶ 22. Plaintiff Rice registered her cell phone number on the DNC on June 20, 2023. *Id*. at ¶ 23. Plaintiff Rice uses her cell phone number for personal use only as one would use a landline telephone number in a home. *Id*. at ¶ 24. Such use includes speaking to family and friends. *Id*. Plaintiff Rice's cell phone is not associated with a business and is not used for business-related purposes. *Id*. at ¶ 25.

In the middle of June 2023, Plaintiff Rice had her credit pulled by her bank. *Id*. at ¶ 26. Plaintiff Rice did not fill out any documentation online. *Id*. at ¶ 27. She was not looking to get a loan from any company other than her bank. *Id*. As soon as her credit was pulled, Plaintiff Rice began receiving unsolicited telemarketing calls to her cell phone regarding the solicitation of loans and refinancing. *Id*. at ¶ 28.

On June 19, 2023 alone, Plaintiff received the following unsolicited calls from Defendant Central Mortgage Funding to her cell phone number: 912-900-8287 at 10:34 AM; 912-292-4082 at 11:52 AM; 912-642-9593 at 12:16 PM; 912-900-8287 at 12:23 PM; 912-642-9593 at 2:13 PM; 912-642-9593 at 2:24 PM; 912-292-4082 at 2:56 PM; and 912-900-8287 at 4:01 PM. *Id*. at ¶¶ 29-30.

Plaintiff Rice received additional unsolicited calls from Defendant Central Mortgage Funding, including: June 21, 2023 from 912-900-8287 at 4:07 PM; June 22, 2023 from 912-642-9593 at 9:13 AM; June 22, 2023 from 912-292-4082 at 10:30 AM; and June 22, 2023 from 912-900-8287 at 12:28 PM. *Id*. at ¶ 31.

On June 22, 2023 at 2:19 PM, Plaintiff Rice received an unsolicited call from Central Mortgage Funding to her cell phone, from 912-642-9593. *Id*. at ¶ 32. When

Plaintiff Rice answered this call, an employee said they were calling from Central Mortgage Funding and began a sales pitch soliciting home refinancing. *Id*. at ¶ 33. The employee claimed that Plaintiff could get better refinancing rates with Central Mortgage Funding. *Id*. Plaintiff told the employee to stop calling her cell phone number and hung up the phone. *Id*.

Despite her stop request, Plaintiff Rice received another unsolicited call from Central Mortgage Funding to her cell phone on June 22, 2023 at 3:32 PM from 912-292-4082. *Id*. at ¶ 34.

Plaintiff Rice then received another unsolicited call to her cell phone from Defendant Central Mortgage Funding on June 22, 2023 at 5:26 PM from 912-900-8287. *Id*. at ¶ 35. When Plaintiff Rice answered this call, an employee said they were calling from Central Mortgage Funding and began a sales pitch soliciting home refinancing. *Id*. at ¶ 36. The employee claimed that Plaintiff could get better refinancing rates with Central Mortgage Funding. *Id*. Plaintiff told the employee to stop calling her cell phone number and hung up the phone. *Id*.

On June 22, 2023 at 5:33 PM, Plaintiff received yet another unsolicited call from Central Mortgage Funding to her cell phone from 912-900-8287. *Id*. at ¶ 37. Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned. *Id*. at ¶ 38.

On June 23, 2023 at 10:31 AM, Plaintiff received an unsolicited call from Central Mortgage Funding to her cell phone, from 912-292-4082. *Id*. at ¶ 39. Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned. *Id*. at ¶ 40.

On June 23, 2023 at 10:43 AM, Plaintiff received an unsolicited call from Central Mortgage Funding to her cell phone, again from 912-292-4082. *Id*. at ¶ 41. Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned. *Id*. at ¶ 42.

On June 23, 2023 at 12:18 PM, Plaintiff received an unsolicited call from Central Mortgage Funding to her cell phone, again from 912-292-4082. *Id*. at ¶ 43. Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned. *Id*. at ¶ 44.

On June 23, 2023 at 2:55 PM, Plaintiff received an unsolicited call from Central Mortgage Funding to her cell phone, again from 912-900-8287. *Id*. at ¶ 45. Plaintiff answered this call and told the employee to stop calling after the company name Central Mortgage Funding was mentioned. *Id*. at ¶ 46.

Plaintiff then received 2 back-to-back calls from Central Mortgage Funding to her cell phone on June 23, 2023 at 3:49 PM from 912-642-9593. *Id*. at ¶ 47.

On August 3, 2023 at 8:05 AM, Plaintiff Rice received an unsolicited call from Central Mortgage Funding to her cell phone, from 912-900-7854. *Id*. at ¶ 48. Plaintiff Rice answered this call. *Id*. at ¶ 49. An employee said that his name is Adrian and that he was calling from Central Mortgage Funding to offer a potential mortgage refinancing. *Id*. In response, Plaintiff told Adrian that she wants the calls stopped and that her phone number is registered on the DNC. *Id*.

On August 8, 2023 at 8:24 AM, Plaintiff Rice received an unsolicited call from Central Mortgage Funding to her cell phone, from 770-824-3943. *Id*. at ¶ 50. Plaintiff Rice answered this call. *Id*. at ¶ 51. An employee said that his name is Noah

and that he was calling from Central Mortgage Funding to offer a mortgage refinancing. *Id*. In response, Plaintiff told Noah that she wants the calls stopped and that her phone number is registered on the DNC. *Id*.

In total, Plaintiff Rice received 24 calls from Central Mortgage Funding to her cell phone number from 5 different phone numbers. *Id*. at ¶ 53. Plaintiff was told that the employees were calling from Central Mortgage Funding in calls from each of the 5 phone numbers. *Id*.

Plaintiff Rice has never done business with Central Mortgage Funding and has never given them consent to call her phone number. *Id*. at ¶ 54.

The unauthorized solicitation telephone calls that Plaintiff Rice received from or on behalf of Defendant Central Mortgage Funding have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone. *Id*. at ¶ 55.

Seeking redress for these injuries, Plaintiff Rice, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA. *Id*. at ¶ 56.

## ARGUMENT

### 1. <u>Plaintiff Alleges Receiving Multiple Calls Directly From Defendant</u>

The TCPA provides for the liability of a party that itself initiates a violative call. 47 C.F.R. §§ 64.1200(c), (d) ("No person or entity shall initiate …").

Here, Plaintiff alleges that Central Mortgage Funding initiated dozens of calls to her. Specifically, she alleges that between June 22 and August 8 she received 24 calls from 5 telephone numbers, and that during at least 9 of those calls (including at least 1 call from each of the 5 numbers) the caller stated they were calling from

Central Mortgage Funding. First Amended Complaint at ¶¶ 29-51. In addition, Plaintiff alleges that during at least 4 of these calls, the callers that identified as being from Central Mortgage Funding tried to sell Plaintiff on a mortgage refinancing, which is precisely the type of business Central Mortgage Funding is involved in. *Id.* at ¶¶ 13-14, 33, 36, 49-50. No other company was identified at any other point of any of the calls and no other type of product or service was promoted. *Id.* at ¶¶ 29-51.

Under these circumstances, the only reasonable inference is that Central Mortgage Funding is directly liable under the TCPA because it initiated the calls to Plaintiff. *See, e.g., Smith v. Am.-Amicable Life Ins. Co.*, No. 22-333, 2022 U.S. Dist. LEXIS 62115, at *4-5 (E.D. Pa. Apr. 4, 2022) ("The Court finds that, if true, Plaintiff's allegation that he was informed during both prerecorded calls that he was speaking with American-Amicable supports a plausible inference that Smith was indeed called by or on behalf of American-Amicable. This inference is also supported by the allegation that both calls concerned insurance benefits—American-Amicable's area of business."); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916, at *7 (M.D. Fla. Sep. 23, 2021) ("To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.").

Defendant's motion should therefore be denied.

## 2. <u>Plaintiff Alleges That Her Number Is Residential</u>

Plaintiff Rice alleges at least five different facts supporting the reasonable inference that the telephone number that Central Mortgage Funding called 24 times

in less than two months is residential. Specifically, Plaintiff alleges that (1) she is the named subscriber of the number, (2) she is the sole user of the number, (3) she registered the number on the National Do Not Call Registry, (4) she uses the number for personal use as one would use a landline number in a home, including to communicate with family and friends, and (5)  the number is not associated with a business or used for business-related purposes. First Amended Complaint at ¶¶ 22-25. Nothing more is required.

For purposes of a TCPA claim, a plaintiff sufficiently alleges that a cellular telephone number is residential by alleging "that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use." *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS, 2022 U.S. Dist. LEXIS 87464, at *7-8 (E.D. Wis. May 16, 2022); *see, e.g., Escano v. Rci LLC*, No. 22-360 DHU/GJF, 2022 U.S. Dist. LEXIS 213384, at *33-34 (D.N.M. Nov. 28, 2022); *Powers v. One Techs., LLC*, No. 3:21-CV-2091, 2022 U.S. Dist. LEXIS 134034, at *7 (N.D. Tex. July 28, 2022) ("For almost two decades the Federal Communications Commission has allowed wireless subscribers to participate in the national do-not-call list. The Commission explains that the question of whether a subscriber is "residential" is fact-intensive and for practical reasons 'presume[s] [that] wireless subscribers who ask to be put on the national do-not-call list [are] "residential subscribers."' For the purpose of the motion to dismiss, this Court will presume the same."); *Trim v. Mayvenn, Inc.*, No. 20-cv-03917-MMC, 2022 U.S. Dist. LEXIS 63222, at *10 (N.D. Cal. Apr. 5, 2022) (denying defendant summary judgment: "Here, Trim is presumed to be a residential subscriber because

the phone number at issue is listed on the NDNC Registry."); *Klassen v. Protect My Car Admin Servs.*, 599 F. Supp. 3d 1243, 1246 (M.D. Fla. 2021) ("Klassen alleges that she listed her cell phone number on the Do Not Call Registry in May 2007. (Dkt. 15 at ¶ 13) Almost thirteen years later, in March and April 2020, Protect My Car allegedly called that number at least five times 'for solicitation purposes.' (*Id.* at ¶¶ 15-16) These allegations are sufficient to plead a violation of Section 227(c)."); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) ("Rosenberg submits that he placed his cellular phone number on the National Do Not Call registry and that he uses his cell phone as his residential line. Those allegations are adequate for the purposes of pleading."); *Valdes v. Century 21 Real Estate, LLC*, No. 2:19-05411, 2019 U.S. Dist. LEXIS 182616, at *8-9 (D.N.J. Oct. 21, 2019) ("The Court finds that in light of the FCC guidance stating that 'it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections,' it is sufficient under Rule 12(b)(6) that Valdes has alleged that his cellular telephone number was not used for a business purpose."); *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1234 (D.N.M. 2019) ("The FCC presumes that wireless telephone users who subscribe to the National Do Not Call Registry are residential subscribers.").

Plaintiff Rice does precisely this, if not more.

In fact, because Plaintiff alleges her "cell phone number is on the Do Not Call Registry," it "is 'presumed to be residential.'" *Rci LLC*, 2022 U.S. Dist. LEXIS 213384, at *39. Only "'[a]fter discovery, [Defendant] may [nevertheless] seek to argue that they have rebutted the [residential phone] presumption by showing that

[Plaintiff's] cell phone[] [was] used to such an extent and in such a manner to be properly regarded as [a] business rather than 'residential' line[].'" *Id*.

The cases Central First Mortgage cites don't support a different conclusion.

For example, in *Gillam v. Reliance First Capital, LLC*, No. 21-CV-4774 (JMA) (JMW), 2023 U.S. Dist. LEXIS 29477, at *9 (E.D.N.Y. Feb. 22, 2023), the only allegation the court evaluated in determining whether the plaintiff sufficiently pled that his telephone number was residential was the plaintiff's allegation that "his cell phone number was not 'associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use'". The court did not evaluate whether the plaintiff's registration of his telephone number on the National Do Not Call Registry was a sufficient basis to presume his number was residential at the pleadings stage. *Id*. In contrast here, Plaintiff Rice pleads more robust facts that the plaintiff in *Gillam* regarding her use and ownership of the telephone number Central Mortgage Funding called to sell a residential mortgage refinancing, and, at this stage, by simply alleging her telephone number is on the National Do Not Call Registry, she has sufficiently pled that it is residential. *See also Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, at *12 (E.D. Va. Aug. 6, 2020) (cited in Central Mortgage Funding's motion) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry—which appears to be undisputed—but his argument never returns to the facts of *this* case or the use of his phone. Perhaps easily addressed by amendment, this is another example of inadequate factual support for Plaintiff's claims.").

Defendant's motion should therefore be denied.

### 3.  <u>Plaintiff Alleges That Defendant's Calls Were Telemarketing</u>

"The TCPA prohibits . . . telephone solicitations sent to residential telephone subscribers …." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1220 (9th Cir. 2022). The purpose of this provision is to protect consumer privacy. *See* 68 Fed. Reg. 4580, 4637 (Jan. 29, 2003) ("The goal in both the TCPA and § 6102(a)(3) of the Telemarketing Act is to protect consumer privacy."); S. Rep. No. 102-178 at 1 (noting that telephone solicitations are both a nuisance and an invasion of privacy); *Nat'l Coal. of Prayer, Inc. v. Carter*, 455 F.3d 783, 797 (7th Cir. 2006) (Williams, J., concurring) (the TCPA "permits a citizen to erect a wall that no advertiser may penetrate without his acquiescence.").

The TCPA defines a telephone solicitation as "the initiation of a telephone call or message *for the purpose* of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4).

"In crafting the TCPA, Congress sought primarily to protect telephone subscribers from unrestricted commercial telemarketing activities, finding that most unwanted telephone solicitations are commercial in nature." *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14089 (2003).

"[W]hether a call is a solicitation turns on the purpose of the message. … The Court must also approach the purpose of the message with a measure of common

sense. It is the purpose behind a call that controls, not what happened during the call." *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 U.S. Dist. LEXIS 6018, at *4-6 (D. Ariz. Jan. 12, 2023) ("Except for encouraging the purchase of its products, it is hard to imagine why an insurance company would contact a consumer not already insured by it and state that it looked forward to saving the consumer money, as did the recorded message in this case." (cleaned up)).

Moreover, "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012); *see also Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) ("Notwithstanding the plain language of the regulations, defendants argue that we should consider only the content of the calls in determining whether they were telemarketing. We refuse to do so.").

Here, Plaintiff alleges that during at least 4 different calls Central Mortgage Funding employees tried to sell her a mortgage refinance, which is one of the products Central Mortgage Funding sells. First Amended Complaint at ¶¶ 13-14, 33, 36, 49-50. In fact, during at least 2 of these calls, the Central Mortgage Funding employees specifically told Plaintiff that she could save money by refinancing with Central Mortgage Funding. *Id.* at ¶¶ 36, 39.

Plaintiff Rice also alleges that has never done business with Central Mortgage Funding and has never given them consent to call her phone number. *Id.* at ¶ 54; *cf. Gillam*, 2023 U.S. Dist. LEXIS 29477, at *5-6 (cited in Central Mortgage Funding's motion) ("Indeed, the Complaint does not allege that: (1) Plaintiff had not previously

invited or permitted Defendant to call him and that (2) he and RFC lacked an 'established business relationship' prior to the receipt of any calls from RFC's agent(s).").

Under these circumstances, given the nature of the calls that Plaintiff answered during the same 7 week period, and the fact that Plaintiff had no relationship of any kind with Central Mortgage Funding, it is reasonable to infer that even the calls Plaintiff did not answer or the ones she hung up on after the employees identified themselves as working for Central Mortgage Funding were for the purpose of selling her a mortgage refinance. *See, e.g., Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ("Sempris does not dispute that Quality initiated four calls to Toney in December 2012, but contends that Toney cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because Toney does not allege--and cannot allege--that she has any personal knowledge of what the content of those calls would have been. … The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services."). There is absolutely no other reason for Central Mortgage Funding to have been calling Plaintiff.

But that is not an issue the Court needs to address at this stage, as there is no reasonable argument that at least 2 of Central Mortgage Funding's calls do not

constitute telephone solicitations, which is all that is required to pursue claims under the TCPA's National Do Not Call Registry and internal do not call list provisions. *See* 47 U.S.C. § 227(c)(5) (establishing a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity"); *see also Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1004-05 (N.D. Ill. 2014) ("Rule 8(a)(2) does not require a TCPA plaintiff to plead every detail about every text message or telephone call placed. … The Court finds persuasive [the plaintiff's] argument that, because the TCPA is designed to combat mass unsolicited commercial telemarketing, at times involving thousands of calls or text messages, notice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every text message." (cleaned up)).

Defendant's motion should therefore be denied.

### 4. Plaintiff Alleges An Internal Do Not Call List Provision Claim

The TCPA expressly requires companies that engage in telemarketing to implement certain policies and procedures for maintaining an internal do not call list. 47 C.F.R. § 64.1200(d). There are six specific minimum requirements that a company is required to satisfy. *Id*. at § (1)-(6). One of them is maintaining an internal do not call list. *Id*. at § (d)(6). Another is training personnel regarding the existence and use of the internal do not call list. *Id*. at § (d)(2). And still another is recording do not call requests and complying with them. *Id*. at § (d)(3). If a company fails to satisfy any one of these requirements, it is not entitled to engage in telemarketing (and violates the law by doing so), regardless of whether it satisfies all of the regulation's other requirements.

Allegations that a company failed to honor a request for telemarketing calls to stop are in and of themselves sufficient at this stage of the proceedings for the Court to infer that Central Mortgage Funding's policies and procedures for maintaining an internal do not call list were inadequate. *Compare Delgado v. Emortgage Funding, LLC*, No. 21-CV-11401, 2021 U.S. Dist. LEXIS 196785, at *12 (E.D. Mich. Oct. 13, 2021) ("She has also plausibly alleged that defendant has failed to institute adequate procedures to comply with the requests of persons who do not want to receive telemarketing calls, given the calls' persistence days after plaintiff asked that they cease.") *with Shelton v. Merch. Flow Fin. Corp.*, No. 18-11294 (JMV) (SCM), 2018 U.S. Dist. LEXIS 217826, at *19-20 (D.N.J. Dec. 28, 2018) ("However, according to Plaintiff's allegations, after he requested Defendant Merchant Flow to place him on their internal do-not-call list, he did not receive any further calls. Thus, it is not reasonable to infer that Defendant Merchant Flow did not have the internal list because they did in fact stop contacting Plaintiff. Plaintiff has not sufficiently plead a violation of FCC Regulation 64.1200(d)(1)."); *but see Barr v. Macys.com, LLC*, No. 1:22-cv-07867 (ALC), 2023 U.S. Dist. LEXIS 176653, at *12-13 (S.D.N.Y. Sep. 29, 2023) (cited in Central Mortgage Funding's motion) ("Neither has Plaintiff significantly alleged a violation of subsection (d)(3) for failure to honor Plaintiff's request to not be contacted. … Here, the Court struggles to see how failure to comply with Plaintiff's DNC request within one business day could be unreasonable.").

Here, Plaintiff alleges that during 9 different calls, including multiple on June 22, she told Central Mortgage Funding to stop calling her, but that the calls continued

for 7 more weeks, until August 8. First Amended Complaint at ¶¶ 32-51. In fact, Plaintiff received 11 more calls from Central Mortgage Funding after her first stop request, including 8 more during which she expressly asked for the calls to stop. *Id*. It is therefore reasonable to infer based on these facts that either Central Mortgage Funding failed to implement the necessary policies and procedures for telemarketing either by failing to maintain an internal do not call list or failing to train personnel regarding the use and existence of the list or failing to adequately record and honor do not call requests or some combination of all three. *See, e.g., Delgado*, 2021 U.S. Dist. LEXIS 196785, at *12.

As a result, it would be unreasonable at this stage of the proceedings for the Court to draw an inference in Defendant's favor—and against Plaintiff—that Defendant maintained adequate internal do not call policies and procedures based on Plaintiff's allegations that despite repeatedly requesting that Defendant stop calling them, and Defendant's ability to honor those requests, Defendant kept telemarketing to her and other consumers that did not want to be called. First Amended Complaint at ¶¶ 19, 27-38.

Defendant's motion should therefore be denied.

### 5. There Is No Basis For Striking Any Of Plaintiff's Allegations

"Motions to strike under 12(f) are viewed with disfavor. Even allegations in a complaint which supply background or historical material or which are of an evidentiary quality will not be stricken unless unduly prejudicial to defendant." *E.g., Paraschos v. YBM Magnex Int'l, Inc.*, No. 98-6444, 2000 U.S. Dist. LEXIS 3829, at *37-38 (E.D. Pa. Mar. 28, 2000) (denying motion to strike) (cleaned up).

Here, Plaintiff Rice's allegations regarding the experiences of other consumers receiving incessant, unsolicited telemarketing calls from Central Mortgage Funding, and Central Mortgage Funding hiring employees to make incessant, unsolicited telemarketing calls, should not be stricken because they are relevant to the Plaintiff's allegations (1) that Central Mortgage Funding makes telemarketing calls, including to numbers on the National Do Not Call Registry and to consumers who have specifically requested to not be called 's calls were telemarketing, (2) that Central Mortgage Funding's TCPA violations were willful, and (3) that the proposed classes satisfy the required elements for class certification, including typicality, commonality, and numerosity. *See, e.g., Delgado*, 2021 U.S. Dist. LEXIS 196785, at *15 (E.D. Mich. Oct. 13, 2021) (denying motion to strike filed by Central Mortgage Funding's same counsel: "In the amended complaint, plaintiff references various online posts in which consumers complain that they have received numerous unsolicited calls from defendant and/or from the same number that allegedly called plaintiff. *See* Am. Compl. ¶¶ 20-21. Some of the complainants also state that the caller offered them mortgage products or services. *See id*. The Court does not find these historical allegations to be redundant, immaterial, impertinent, or scandalous. Rather, they add to the plausibility of plaintiff's allegations, address defendant's compliance (or lack thereof) with the TCPA's safe harbor provisions, and speak to whether defendant knowingly or willfully violated the TCPA."); *Marquette v. Homeadvisor, Inc.*, No. 6:20-cv-1490-Orl-31EJK, 2021 U.S. Dist. LEXIS 132112, at *5-6 (M.D. Fla. Jan. 15, 2021) ("Marquette is correct. These allegations could be helpful to establish the various Rule 23 requirements

necessary to certify a class; if true, they show that other people have had similar experiences with HomeAdvisor."); *Wiseberg v. Toyota Motor Corp.*, No. 11-3776 (JLL), 2012 U.S. Dist. LEXIS 45849, at *38 (D.N.J. Mar. 30, 2012) ("anonymous Internet complaints could be relevant to the issue of knowledge").

There is accordingly no basis to strike any of Plaintiff's allegations, and Defendant's motion should therefore be denied.

### 6. There Is No Basis For Striking Plaintiff's Classes

While motions to strike class allegations may be appropriate where the "propriety *vel non* of class certification can be gleaned from the face of the pleadings… [P]recedent also counsels that the parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) (reversing district court's striking of class allegations, explaining that "the district court's conclusion as to the predominance issue at the complaint stage was speculative at best and premature at least."). There is a high standard and limited circumstances under which it is appropriate to strike class allegations at the pleading stage in *Herrera v. JFK Med. Ctr., Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016) (the district "court erred in finding that, as a matter of law, class treatment was inappropriate based on the face of Plaintiffs' complaint").

As a result, district courts have been cautious in considering motions to strike class allegations and have denied the "extreme remedy" where "Defendants did not

19

establish from the face of the complaint that it will be impossible to certify the classes alleged by Plaintiffs." *E.g., Sullivan v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-Orl-40KRS, 2018 U.S. Dist. LEXIS 219633, at *9 (M.D. Fla. Aug. 1, 2018) (internal citation omitted); *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-890-Orl-40KRS, 2018 U.S. Dist. LEXIS 67501, at *3-4 (M.D. Fla. Mar. 12, 2018); *see MSP Recovery Claims, Series LLC v. AIX Specialty Ins. Co.*, No. 6:18-cv-1456-Orl-40DCI, 2019 U.S. Dist. LEXIS 86051, at *11 (M.D. Fla. May 22, 2019) (finding that arguments for dismissal of class allegations generally "are premature"); *Burke v. Credit One Bank, N.A.*, No. 8:18-cv-00728-EAK-TGW, 2019 U.S. Dist. LEXIS 62770, at *6 (M.D. Fla. Feb. 5, 2019) ("courts faced with motions to dismiss or strike class allegations prior to class certification have declined to rule on class certification due to the prematurity of such motions.").

In fact, as another court in this District has explained with regard to a motion to strike class allegations in another TCPA case involving Central Mortgage Funding's same counsel representing the defendant:

> The Court shall also deny defendant's motion to strike plaintiff's class allegations and references to historical online consumer complaints. As to the former, defendant's request is premature. The Supreme Court has repeatedly emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question. Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim. That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. The Sixth Circuit has added that class certification is appropriate if the court finds, after conducting a rigorous analysis, that the requirements of Rule 23 have been met.

> While both of plaintiff's proposed classes must meet Rule 23's various requirements in order to be certified, the parties have yet to reach this stage in the litigation. At present, the Court lacks the information necessary to conduct a rigorous analysis under Rule 23. Moreover, based on the facts alleged in plaintiff's amended complaint, it is possible that she will be able to meet Rule 23's class certification requirements. The Court will therefore defer ruling on the viability of plaintiff's proposed classes until a motion to certify the class is briefed.

*Delgado*, 2021 U.S. Dist. LEXIS 196785, at *13-14 (cleaned up).

Considered through this framework, Central Mortgage Funding's motion to strike Plaintiff's proposed classes should be denied. Specifically, Central Mortgage Funding does not identify an actual basis to conclude that Plaintiff will be unable to establish predominance.

*First*, Central Mortgage Funding's mere allusion to potential consent is not enough to find Plaintiff's classes uncertifiable at this or any other stage. *See, e.g., Mohamed v. Off Lease Only*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) ("conclusory argument" about prior express consent cannot defeat predominance); *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449, at *43 (S.D. Fla. June 26, 2018) ("unadorned consent defenses will not defeat class certification").

Indeed, the Sixth Circuit has forcefully rejected such speculation permitting class allegations to be stricken prior to any discovery in a TCPA case in *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding in a TCPA case that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of

21

predominance."). And notably, here, Central Mortgage Funding's speculation appears to be inconsistent with what actually occurred—Central Mortgage Funding purchased the leads of consumers whose credit had been pulled but who had done nothing to authorize Central Mortgage Funding to call them, and then called them incessantly regardless of whether their telephone numbers were on the National Do Not Call Registry or whether they expressly requested that the calls stop. First Amended Complaint at ¶¶ 19, 26-28.

"Express consent" is not an element of a plaintiff's prima facie case for Plaintiff's TCPA claims, but are "affirmative defense[s] for which the defendant bears the burden of proof." *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); 47 C.F.R. §§ 64.1200(c)(2)(i)-(ii), (f)(5).  Even at the class certification stage, evidence of a defense as to some prospective class members does not render a class overbroad if the plaintiff demonstrates a means of ultimately excluding consumers that are subject to the defense from the class.  *See True Health Chiropractic v. McKesson Corp.*, 896 F.3d 923, 932-33 (9th Cir. 2018) (predominance satisfied where "the record shows . . . little or no variation" in the forms used to obtain consent).  Here, since discovery has not commenced, there has been no showing that Central Mortgage Funding made any calls with consent.

*Second*, there is no basis to conclude at this stage that Plaintiff's internal do not call list class is not certifiable. Instead, as expressly defined, the class will be limited to consumers for whom Central Mortgage Funding's records reflect that Central Mortgage Funding understood that the consumers told them they did not want to be called, i.e., for whom Central Mortgage Funding's records reflect "Do

Not Call" or "DNC" or some other relevant annotation, and who Central Mortgage Funding continued making telemarketing calls to thereafter. *See, e.g., Lanteri v. Credit Prot. Ass'n L.P.*, No. 1:13-cv-1501-WTL-MJD, 2018 U.S. Dist. LEXIS 166345, at *17 (S.D. Ind. Sep. 26, 2018) (granting class certification where revocation class membership could be determined from the defendant's business records and explaining "there is no need for individualized inquiry into whether each potential class member revoked consent. Answering the common question—Did the "stop" messages revoke consent?—determines whether consent was revoked for all potential class members. Accordingly, this question predominates over questions affecting only individual class members."); *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 U.S. Dist. LEXIS 94055, at *17 (D.N.M. June 5, 2018) ("Moreover, the Court concludes that common issues predominate, and Plaintiff's proposed methodology eliminates individualized inquiries or mini-trials. The class members appear to be in the same factual situation, the class is likely to fail or succeed on the merits (such as whether class members expressly revoked consent) on the same common evidence, i.e., Defendants' business records."); *Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1315 (N.D. Ga. 2016) (denying motion to strike class allegations because the "Plaintiff allege[d] that Defendant ha[d] a centralized, ascertainable list of cell numbers to which the [TCPA violative] texts were sent, along with opt-out dates for those same numbers").

At a minimum, as to the revocation inquiry, it is premature for the Court to conclude that there is no set of facts that Plaintiff can prove that would allow for class certification.  *See Iverson v. Advanced Disposal Servs.*, No. 3:18-cv-867-J-

23

39JBT, 2019 U.S. Dist. LEXIS 104015, at *9 (M.D. Fla. June 7, 2019) (denying motion to strike revocation class allegations: "as to the remainder of Advanced's contentions, such as lack of predominance, these considerations are best addressed following class discovery and a fully developed motion for class certification").

The cases Central Mortgage Funding cites are distinguishable and do not change the conclusion that, based on the allegations of Plaintiff's complaint, class certification is possible. For example, "*Cholly v. Uptain Group* … No. 15 C 5030, 2017 U.S. Dist. LEXIS 14449, 2017 WL 449176, at *3 (N.D. Ill. Feb. 1, 2017) … involved a third amended complaint …. In ruling on the motion to strike class allegations in the first amended complaint two years earlier, the court held that it would be premature to do so prior to discovery." *Marshall v. Grubhub Inc.*, No. 19-cv-3718, 2021 U.S. Dist. LEXIS 184291, at *16-17 (N.D. Ill. Sep. 27, 2021).

Ultimately, "[w]hile the… [class] definition[s] may prove to strongly correlate with success or failure on the merits, the qualifying standards to join the class are based on factual criteria, not legal ones." *Iverson*, 2019 U.S. Dist. LEXIS 104015, at *7. Accordingly, it would be appropriate to certify a class of consumers who were called after Central Mortgage Funding indicated in its records logs that the consumers did not want to be called.

*Third*, with regard to the determination of whether a call was made to a residential number, because Central Mortgage Funding provides residential mortgage services to consumers, the only reasonable inference now is that all of Central Mortgage Funding's calls are made to residential telephone lines. *See also Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223-24 (9th Cir. 2022) (discussing

24

presumption that National Do Not Call Registry registered numbers are residential).

If discovery demonstrates that some of Central Mortgage Funding's calls were made to non-residential numbers, Plaintiff will rely on common expert testimony to demonstrate which calls were made to residential numbers. *See, e.g., Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist. LEXIS 52650, at *10 (N.D. Cal. Mar. 23, 2022) (certifying TCPA class based on Plaintiff's expert testimony regarding which calls were to residential numbers: "Verkhovskaya reasonably assumed that the phone numbers were residential because Reaology agents were instructed to call residential real estate owners. Verkhovskaya used a LexisNexis database to identify numbers associated with businesses or the government." (cleaned up)).

*Fourth*, there is likewise no basis to conclude based on the current record that Central Mortgage Funding made any calls to putative class members for any reason other than to sell them a mortgage loan. If discovery reveals that Central Mortgage Funding engaged in multiple different calling campaigns for different purposes, Plaintiff will seek to certify a class of only consumers who received calls as part of a campaign to sell a mortgage loan, like the calls to the Plaintiff were intended to. As a result, it is premature to rule on the viability of any of Plaintiff's proposed classes at the current stage.

Defendant's motion should therefore be denied.

## CONCLUSION

Based on the foregoing, the Court should deny Central Mortgage Funding's motion to dismiss and strike.

Respectfully Submitted,

DATED this 5th day of January, 2024.

/s/ *Avi R. Kaufman*

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

George T. Blackmore*
CND Law Group PLLC
32900 Five Mile Road
Livonia, MI 48154
734-888-8399
Fax: 734-418-3686
Email: gblackmore@cnd-law.com

*Attorneys for Plaintiff and the putative Classes*

*\*Local counsel*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 5, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*